Robert Tauler (SBN 241964)
Matthew J. Smith (SBN 240353)
Tauler Smith LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
Telephone: (310)746-5601
rtauler@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>LECHEEK NUTRITION, INC., an Arkansas Corporation; GENOMYX, LLC, a California Corporation; RETAIL EXCLUSIVE DISTRIBUTION, INC., an Arkansas Corporation; DUSTIN LEBLEU, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:15-cv-01322-MWF-MRW<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF SECTION 42 (a)(1)(B) OF THE THE LANHAM ACT**<br><br>**[DEMAND FOR A JURY TRIAL]** |

**FIRST AMENDED COMPLAINT**

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff"), by and through its undersigned attorneys, submits this First Amended Complaint against Lecheek Nutrition ("Lecheek"), Genomyx, LLC ("Genomyx"), Retail Exclusive Distribution ("RED") and Dustin LeBleu ("LeBleu") (jointly, "Defendants"), and in support thereof, avers as follows:

## INTRODUCTION

1. This is a civil action arising from Defendants' marketing, sale, and distribution of an ingredient in certain nutritional supplements labeled as "AMP Citrate." AMP Citrate is falsely advertised as being derived from the aroma of Pouchong tea. In reality, AMP Citrate is a name for DMBA, a product created in a lab that has been declared potentially unsafe in humans by researchers at Harvard.

2. Once national newspapers published Defendants' use of the synthetic drug in their products and the potential dangers related thereto, less than two weeks later Defendants simply changed the trade name to "AMPiberry," formed a new company and business plan to fly under the radar, and continued to mislabel their products. Thus, by the time the FDA finally got around to banning AMP Citrate formally in April of 2014, LeBleu had already trademarked "AMPiberry" and formed defendant Retail Exclusive Distribution, Inc. selling mislabeled goods, this time only to brick and mortar stores.

3. Defendants' continuing false, misleading, illegal and deceptive practices have violated the Lanham Act and have unjustly enriched Defendants at the expense of ND, and has caused ND extensive and irreparable harm, including, but not limited to, loss of revenue, disparagement, and loss of goodwill.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

1 | 5. This Court has personal jurisdiction over Defendants because Defendants have, directly or through their intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised their nutritional supplement products in the United States, the State of California, and this district. Defendants have purposefully and voluntarily placed their respective products, including AMPilean, EVOL and AMPiberry, into the stream of commerce with the expectation that they will be purchased in this district.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

7. Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

8. Defendant Lecheek Nutrition ("Lecheek") is an Arkansas Corporation which lists 3025 Tori Dr., Harrison, AR 72601 as its business address.

9. Defendant Genomyx LLC ("Genomyx") is a California corporation which lists 12348 Sandy Creek Dr., Riverside, CA 92503 as its business address.

10. Defendant Retail Exclusive Distribution, Inc. ("RED") is an Arkansas Corporation which lists 3025 Tori Dr., Harrison, AR 72601 as its business address.

11. Defendant Dustin LeBleu ("LeBleu") is an individual based in Arkansas and, on information and belief, CEO of all of the other Defendant companies.

1. Plaintiff is informed and believes and on that basis alleges that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendants LeBleu and Defendants Lecheek, Genomyx and RED, such that any individuality and separateness between these defendants have ceased. Adherence to the

fiction of the separate existence of defendants as separate entities distinct from LeBleu would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

12. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1- 10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

13. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act.

### Plaintiff Nutrition Distribution & Slim FX

14. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

15. Plaintiff has products targeting several sub-categories of the bodybuilding supplement market, including pre-workouts (taken before a workout for energy), mass gainers, and fat-burners.

16. Around 2011, Plaintiff began developing a new product in the fat-burner category of the bodybuilding supplement world. At the time, the most popular fat burners on the market contained DMAA, which began to come under severe scrutiny from federal regulators. Anticipating the demise of DMAA-based products by way of

federal law enforcement, Plaintiff researched and developed a fat burner that was DMAA free. Plaintiff's strategy was to fill the market void left by the eventual absence of soon-to-be illegal DMAA.

17. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Slim FX" in October of 2011. DMAA stayed on the market until 2012, when the FDA sent warning letters to eleven manufacturers questioning DMAA's safety and challenging their claims that the ingredient even qualifies as a dietary supplement. With the FDA closing in, manufacturers pulled their products off the shelves, creating the opportunity Plaintiff anticipated for Slim FX to gain substantial market share.

18. However, around the same time DMAA was being taken off the shelves, Defendants Lecheek and Genomyx released their competing products, "AMPilean" and "EVOL." These products were far more potent than other products on the market and quickly filled the market void from the absence of DMAA.

**Defendants & AMP Citrate**

19. Defendants Lecheek and Genomyx sell nutritional supplements. Lecheek nutrition touts itself on its website as a company that provides "hardcore products" that get "hardcore results," and further explains "Lecheek Nutrition has really become one of the premier brands in the industry for Hardcore Products." The term "hardcore" is not defined on Lecheek's website.

20. Lecheek launched AMPilean in November 2013. AMPilean was advertised as the "strongest fat burner in the last ten years." Lecheek cited something called "AMP Citrate" as the "key ingredient" in AMPilean. Lecheek falsely claimed that AMP Citrate is "extracted from the aroma of Poucheng tea," when in reality it is a synthetic ingredient with a virtually identical structure to the now-banned DMAA.

21. Genomyx claims on its website that it prides itself on "extensively researching each individual ingredient" in its products. "Constantly and consistently accounting for safety…"

22. One of the products Genomyx sold was called "EVOL." Although Genomyx claims on its website to have thoroughly researched each individual ingredient in EVOL for safety, one of its ingredients, "AMP Citrate," has been found by the FDA to be an illegal dietary supplement ingredient that is potentially unsafe for humans. The FDA has ordered that Genomyx stop its sale and distribution due to these concerns.

23. Contrary to the advertising on its website, the CEO of Genomyx, Defendant Dustin LeBleu, has stated on the record that the only "research" that was conducted with respect to the AMP Citrate in EVOL was his reliance on statements made by one salesperson. There was never any "extensive research" or "constant and consistent" accounting for safety as promised to Genomyx consumers.

## AMP Citrate Exposed

24. Around September 21, 2014, an independent study was published by Harvard researcher Peter Cohen (the "Harvard Study") confirming that so-called AMP Citrate is not derived from the aroma of Poucheng tea as advertised, but, indeed a synthetic compound created in a laboratory that is virtually identical to the banned DMAA. The Harvard Study dubs the new compound "DMBA," due to the chemical similarities with DMAA.

25. The Harvard Study concluded that AMPilean contained 120 milligrams of DMBA, more than any other product studied, and much more than could conceivably be derived from "aroma." DMBA was also found in EVOL.

26. On October 8, 2014, a USA today article was released shining the spotlight on Lecheek's wrongdoing regarding AMP Citrate. On October 17, 2014, Lecheek claimed on its website that it would stop selling AMP Citrate.

27. Lecheek made false claims about the properties of AMP Citrate, about the contents of AMPilean, and about its research of the contents of EVOL. Defendant Lecheek falsely marketed AMPilean as having the "key ingredient" AMP Citrate that is derived from tea aroma, when in fact AMP Citrate is a synthetic analog of the illegal substance DMAA that has never even been tested on humans. Lecheek falsely marketed

AMPilean as being rigorously tested, when in reality there was no safety testing conducted according to Dustin LeBleu, CEO of Lecheek.

### LeBleu Creates "AMPiberry" and Forms "Retail Exclusive Distribution."

28. Obviously, without the income streams from the sale of products containing AMP Citrate, LeBleu would be making less money. So LeBleu developed a plan to piggy-back off of the success of AMP Citrate with a new ingredient called "AMPiberry." Indeed, less than two weeks after the USA Today article hit the presses, Lecheek filed a trademark registration for "AMPiberry." In December of 2014, LeBleu formed Retail Exclusive Distribution, Inc., which sells products solely to brick and mortar nutrition stores, including several brands selling AMPiberry.

29. To this day, Lecheek sells a version of AMPilean with AMPiberry instead of AMP Citrate. The label of these products describes "AMPiberry" as simply "juniperous communis," giving the false impression that AMPiberry is purely an extract of the common shrub. Accordingly to Dustin LeBleu, however, AMPiberry merely "*includes* extracts of the juniper berry." (emphasis added).

30. While, LeBleu has been silent thus far as to the remaining components of AMPiberry, his customers have vociferously championed how strong the ingredient is. For example, RED owns a line of products deemed "Insane Labz" which produces a supplement called "Psychotic." Users on Insane Labz Facebook page marvel at how the effects of the supplement are "like meth."

31. Defendants scheme to outflank government regulators to sell these illicit products not only damages competitors like Plaintiff with unadulterated products like SlimFX, it potentially puts consumers in serious danger.

### CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

32. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

33. Defendant Genomyx has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its fat burner EVOL, including representations that each ingredient has been "extensively research[ed]" when in reality the CEO of Genomyx admitted that the only research conducted on the ingredient "AMP Citrate" was verbal reliance on the claims of a salesperson. In fact, scientific studies have concluded that AMP Citrate is likely unsafe for human consumption.

34. Genomyx has further falsely advertised its product by claiming it is derived from Pouchong tea, when it reality it is synthetic.

35. The use of Genomyx's false statements has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics than what they are really getting.

36. The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerned about the health implications of taking synthetic compounds in large doses that have not been tested on humans.

37. Genomyx has introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

38. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Genomyx and the loss of good will in Plaintiff's products. Indeed, Genomyx's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

39. Genomyx's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial

advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

## SECOND CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

40. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

41. Defendant Lecheek has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its AMPilean, including that its "key ingredient" is derived naturally from a tea aroma, instead of truthfully stating that AMP Citrate is a synthetic compound untested on humans.

42. The use of such unlabeled and falsely labeled substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

43. The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerns about the health implications of taking synthetic compounds in large doses that have not been tested on humans.

44. Lecheek has introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

45. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Lecheek and the loss of good will in Plaintiff's products. Indeed, Lecheek's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

46. Lecheek's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

# THIRD CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

47. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

48. Defendants RED and LeBleu have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of supplements they sell, including the ingredient AMPiberry which is labeled as "juniperous communis," giving the false impression that AMPiberry is purely an extract of the common shrub. Accordingly to Dustin LeBleu, however, AMPiberry merely "*includes* extracts of the juniper berry." Users claim that products containing AMPiberry are "like meth."

49. The use of such unlabeled and falsely labeled substances has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.

50. The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerns about the health implications of taking synthetic compounds.

51. Defendants RED and LeBleu have introduced its false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

52. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants RED and LeBleu and the loss of good will in Plaintiff's products. Indeed, Defendants' conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

53. Defendants RED and LeBleu's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce which, in

9
**FIRST AMENDED COMPLAINT**

commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

# PRAYER

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendants as follows:

1. For preliminary and permanent injunctive relief enjoining Defendants from producing, licensing, marketing, or selling AMPilean, AMPiberry and EVOL;
2. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;
3. For an award of any and all of Defendants' profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;
4. For restitution of Defendants' ill-gotten gains;
5. For treble damages in accordance with 15 U.S.C. § 1117;
6. For punitive damages;
7. For costs and attorneys' fees; and
8. Any other relief the Court may deem appropriate.

DATED: May 11, 2015　　　　　　　　TAULER SMITH LLP

By: ___/s/ Robert Tauler___
Robert Tauler
NUTRITION DISTRIBUTION LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: May 11, 2015            TAULER SMITH LLP


                               By: ___/s/ Robert Tauler_____
                               Robert Tauler
                               NUTRITION DISTRIBUTION LLC

**FIRST AMENDED COMPLAINT**