1  PETER SCHWARTZ (SBN: 109859)
     pschwartz@gordonrees.com
2  CHRISTOPHER R. WAGNER (SBN: 162092)
     cwagner@gordonrees.com
3  GARY A. COLLIS (SBN: 191800)
     gcollis@gordonrees.com
4  GORDON & REES LLP
   633 West Fifth Street, 52nd Floor
5  Los Angeles, CA 90071
   Telephone: (213) 576-5000
6  Facsimile: (213) 680-4470

7  Attorneys for Defendant Lecheek Nutrition, Inc.

8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11  NUTRITION DISTRIBUTION LLC,  ) CASE NO.  2:15-cv-01322 MWF MRW
    an Arizona Limited Liability  )
12  Company,                      ) **NOTICE OF MOTION AND**
                                   ) **MOTION TO DISMISS FIRST**
13                   Plaintiff,   ) **AMENDED COMPLAINT FOR**
                                   ) **FAILURE TO STATE A CLAIM**
14       vs.                      ) **UPON WHICH RELIEF MAY BE**
                                   ) **GRANTED (Fed. R. Civ. P. 12(b)(6)).**
15  LECHEEK NUTRITION, INC., an   )
    Arkansas Corporation; GENOMYX, )
16  LLC, a California Corporation; )
    RETAIL EXCLUSIVE             ) Date:       June 29, 2015
17  DISTRIBUTION, INC., an Arkansas ) Time:       10:00 a.m.
    Corporation; DUSTIN LEBLEU, an ) Courtroom:  1600
18  individual, and DOES 1 through 10, ) Judge:      Hon. Michael Fitzgerald
    inclusive,                    )
19                                )
                     Defendants.  )
20                                )
                                   )
21  _____ )

22

23  TO THE COURT, ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:

24        PLEASE TAKE NOTICE that on June 29, 2015, or as soon thereafter as the

25  matter may be heard, defendant Lecheek Nutrition, Inc. ("Lecheek"), will, and

26  hereby does, move the United States District Court, Central District of California,

27  located at 312 North Spring Street, Los Angeles, California, 90012-4701, in

28  Courtroom 1600, for an order dismissing the First Amended Complaint of plaintiff

-1-
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  Nutrition Distribution LLC ("ND") for failure to state a claim upon which relief

2  may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

3    This motion is made on the grounds that ND has failed to plead its claim for

4  false advertising under the Lanham Act against Lecheek with the particularly

5  required by Federal Rule of Civil Procedure 9(b).  ND's claim that Lecheek has

6  falsely advertised the ingredient, AMPiberry, also fails because this claim is not

7  "plausible," as required by Federal Rule of Civil Procedure 8(a).  Finally, ND's

8  claim that Lecheek sold "illicit products" is an issue within the scope of authority

9  of the Food and Drug Administration ("FDA").  Therefore, pursuant to the primary

10  jurisdiction doctrine, ND's AMPiberry claim should be dismissed or stayed

11  pending adjudication by the FDA.

12    This motion is made following a conference of counsel pursuant to L.R. 7-3

13  which took place on May 22, 2015.

14

15  Dated:  May 29, 2015    GORDON & REES LLP

16          By:  /s/ Christopher R. Wagner

17            Peter Schwartz
          Christopher R. Wagner

18            Gary A. Collis
          Attorneys for Defendant Lecheek
          Nutrition, Inc.

19

20

21

22

23

24

25

26

27

28

-2-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 3

II.  BACKGROUND .................................................................. 6

    A.   ND's Background ........................................................ 6

        1.   ND's Bankruptcy .............................................. 6

        2.   ND's Criminal Background ............................... 7

        3.   ND's New Strategy: Sue Its Competitors ................... 8

    B.   The Lecheek Action ..................................................... 9

        1.   Pouchong Tea Claim ....................................... 10

        2.   "Rigorous Test[ing]" Claim ............................. 10

        3.   AMPiberry Claim ......................................... 10

        4.   Illegality Claim ......................................... 11

III. LEGAL ARGUMENT ............................................................ 11

    A.   Standard For Motion To Dismiss ....................................... 11

    B.   The FAC Does Not Satisfy Rule 9(b) ................................... 12

    C.   ND Has Failed To Plead A "Plausible" Claim Against Lecheek Relating To The Ingredient, AMPiberry ................................. 17

    D.   ND's Claim That Lecheek Sold "Illicit Products" Should Be Stayed Or Dismissed ................................................... 19

        1.   Congress Has Granted Authority To The FDA To Adjudicate The Legality Of Dietary Supplements ................. 20

        2.   Whether Lecheek's Products Are "Illicit" And Dangerous Are Issues Requiring FDA Expertise And Administration ........................................... 20

IV.  CONCLUSION ................................................................ 23

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITES

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.,*
    260 F. Supp.2d 941 (N.D. Cal. 2003)................................................................. 13

*Anderson v. Jamba Juice Co.,*
    888 F.Supp.2d 1000 (N.D. Cal. 2012)................................................................ 11

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ............................................................ 11, 17, 18

*Astiana v. Hain Celestial Group, Inc.,*
    783 F.3d 753, 2015 U.S. App. LEXIS 5833 (9th Cir. 2015) ............................. 19

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)............................................................................ 11, 17

*Comwest, Inc. v. American Operator Services, Inc.,*
    765 F.Supp. 1467 (C.D. Cal. 1991) ............................................................ 13, 16

*Dietary Supplemental Coalition, Inc. v. Sullivan,*
    978 F.2d 560 (9th Cir. 1992) ...................................................................... 20, 22

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
    711 F. Supp. 2d 1074 (C.D. Cal. 2010) ......................................................... 13

*Gustavson v. Wrigley Sales Co.,*
    961 F.Supp.2d 1100 (N.D. Cal. 2013)............................................................ 16

*Holistic Candlers and Consumers Assoc. v. FDA,*
    664 F.3d 940 (D.C. Cir. 2012)...................................................................... 22

*In re: Glenfed, Inc. Securities Litigation,*
    42 F.3d 1541 (9th Cir. 1994) ...................................................................... 12, 16

*Izenberg v. ETS Services,*
    589 F.Supp.2d 1193 (C.D. Cal. 2008) .......................................................... 12

*JHP Pharmaceuticals, LLC v. Hospira, Inc.,*
    2014 U.S. Dist. LEXIS 142797 (C.D. Cal. 2014) ....................................... 21, 23

*Kearns v. Ford Motor Company,*
    567 F.3d 1120 (9th Cir. 2009) ...................................................................... 13

*Nutraceutical Corp. v. Von Eschenbach,*
    459 F.3d 1033 (10th Cir. 2006) .................................................................... 20

*Pestube Sys., Inc. v. HomeTeam Pest Def., LLC,*
    2006 U.S. Dist. LEXIS 34337 (D. Ariz. 2006) ............................................... 14

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,*
    642 F.Supp.2d 1112 (C.D. Cal. 2009)............................................................ 13

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Reiter v. Cooper*,
  507 U.S. 258 (1993)..................................................................................... 19

*RPost Holdings, Inc. v. Trustifi Corp.*,
  2011 U.S. Dist. LEXIS 117260 (C.D. Cal. 2011) ................................... 13

*Samet v. P&G*,
  2013 U.S. Dist. LEXIS 86432 (N.D. Cal. 2013) ................................... 11

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ................................................................. 12

*Skydive Ariz., Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ......................................................... 17, 18

*Summit Tech. v. High-Line Medical Instruments, Co.*,
  933 F. Supp. 918 (C.D. Cal. 1996) ....................................................... 23

*Transfresh Corp. v. Ganzerla & Associates*,
  862 F.Supp.2d 1009 (N.D. Cal. 2012)............................................ 14, 15

*United States v. General Dynamics Corp.*,
  828 F.2d 1356 (9th Cir. 1987) ................................................. 1, 7, 19, 20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................... 12, 13

**Statutes**

15 U.S.C. § 1051, et seq. (Lanham Act) .............................................. *passim*

21 U.S.C. § 331(d) ....................................................................................... 7

21 U.S.C. § 333(a)(2) ................................................................................... 8

21 U.S.C. §§ 301 ....................................................................................... 20

21 U.S.C. § 335 ........................................................................................... 7

Federal Rule of Civil Procedure 8(a) ............................................... 2, 5, 17

Federal Rule of Civil Procedure 9(b)........................... 5,12, 13, 14, 15, 16

Federal Rule of Civil Procedure 12(b)(6) ...................................... 2, 11

**Other Authorities**

Moore's Federal Practice & Procedure,
  § 9.03 at 9-19-21 (2d ed. 1994) ........................................................... 12

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-iii-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.    INTRODUCTION**

3           Plaintiff Nutrition Distribution, LLC ("ND") and defendant Lecheek

4   Nutrition, Inc. ("Lecheek") each sell dietary supplements to bodybuilders, fitness

5   enthusiasts, and others.  In recent years, ND has suffered financial setbacks.  For

6   example, in 2008, ND filed for Chapter 11 Bankruptcy protection.  In this

7   Bankruptcy proceeding, ND explained that its financial woes were the result of (a)

8   the economic downturn in the dietary supplement industry, (b) product liability

9   suits filed against ND, and (c) the fact that ND was found criminally liable for

10  selling an "unapproved new drug … with the intent to defraud and mislead."

11  Despite these problems disclosed to the Bankruptcy Court, in the present litigation

12  – and in related litigation – ND advances a new theory to explain its financial

13  difficulties: the competition.

14          In this, and other lawsuits filed in the Central District of California, ND

15  claims that the cause of its financial hardship is not the economic downturn,

16  product liability suits, or even ND's criminal conviction.  Instead, ND blames its

17  financial difficulties on alleged false advertising by its competitors.  This new

18  explanation, which was never disclosed to the Bankruptcy Court, is the apparent

19  catalyst behind ND's decision to file a series of lawsuits against several of its

20  competitors, including Lecheek.  It appears that ND has embarked on this unusual

21  and aggressive course of action in the hope of securing favorable settlements that

22  might buoy its troubled finances.

23          In this case, ND's allegations against Lecheek arise from two ingredients

24  that Lecheek has used in its products: (1) AMP Citrate, which Lecheek formerly

25  used as an ingredient in its *initial* formulation of a fat burning product called

26  AMPilean ("AMPilean (1.0)"); and (2) AMPiberry, an ingredient comprised of

27  juniper berry extract which Lecheek now uses in its *current* formulation of

28  AMPilean ("AMPilean (2.0)").  With respect to these two ingredients, and the

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-3-

1 AMPilean product, ND makes the following allegations against Lecheek:

2 • ND contends that Lecheek falsely advertised the ingredient, AMP

3 Citrate, used in AMPilean (1.0) as being derived from the aroma of

4 Pouchong tea.

5 • ND contends that Lecheek falsely marketed that AMPilean has been

6 rigorously tested.

7 • ND contends that Lecheek falsely describes the ingredient,

8 AMPiberry, used in AMPilean (2.0), as "*juniperus communis*"

9 (common juniper) when this ingredient "merely *includes* extracts of

10 the juniper berry."

11 • Finally, ND alleges that Lecheek has engaged in "false, misleading,

12 illegal and deceptive practices" and that, by selling "these illicit

13 products," Lecheek has damaged ND and is placing its "customers in

14 serious danger."

15 In this motion, Lecheek seeks dismissal of ND's cause of action for false

16 advertising in violation of the Lanham Act because ND has not pleaded its claim

17 against Lecheek with the degree of specificity required under Rule 9 of the Federal

18 Rules of Civil Procedure.  False advertising claims under the Lanham Act are

19 subject to the heightened Rule 9 pleading requirements, particularly in the present

20 circumstances, because ND supports its Lanham Act claim by asserting that

21 Lecheek made the false statements "purposely."

22 Rather that comply with the pleading requirements of Rule 9, ND's First

23 Amended Complaint ("FAC") refers, generally, to "false and misleading

24 descriptions of fact concerning the nature, characteristic and qualities" of

25 Lecheek's products and ingredients.  Yet, ND fails to identify each of Lecheek's

26 "false and misleading" advertisements allegedly pertaining to the "nature,

27 characteristics and qualities" of its products.  As for those purported misstatements

28 that are identified in the FAC, ND does not set forth all the particulars of the

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-4-

1  statements, such as how, when, and where Lecheek's allegedly false

2  advertisements were published.  Under Rule 9(b), Lecheek is entitled to this

3  information in ND's pleading so it can adequately defend itself against ND's fraud

4  claims.

5        ND's allegation in the FAC that Lecheek made misrepresentations regarding

6  the ingredient, AMPiberry, is also insufficient.  In order to constitute an adequate

7  showing under Federal Rule of Civil Procedure 8(a), the allegations in a pleading

8  must "possess enough heft" to propel the claims across a threshold of

9  "plausibility."  Because the AMPilean (2.0) label describes AMPiberry as

10 "*juniperus communis*" and Lecheek's CEO recently stated in a declaration that

11 AMPiberry "includes extracts from the juniper berry," ND surmises that Lecheek

12 is falsely representing the contents of AMPiberry in violation of the Lanham Act.

13 ND's speculative interpretation of a declaration is clearly insufficient to support

14 ND's Lanham Act claim regarding AMPiberry.  Not only has ND failed to identify

15 a material misrepresentation regarding AMPiberry, but such a threadbare,

16 speculative claim does not rise to the level of "plausibility" as required by Rule 8.

17        Finally, ND's FAC claims that, in connection with its alleged "false,

18 misleading, illegal and deceptive practices," Lecheek is selling "illicit products"

19 that are a danger to Lecheek's customers.  Whether any of Lecheek's products are

20 "illicit" and pose a hazard to the public are issues that Congress has referred to the

21 FDA for adjudication.  Indeed, for this Court to decide these complex questions

22 would invade the FDA's administrative jurisdiction.  Accordingly, pursuant to the

23 doctrine of primary jurisdiction, ND's claim that Lecheek is selling "illicit

24 products" that pose a danger to its customers are issues that should be dismissed or

25 stayed, pending adjudication  by the FDA.

26        For the foregoing reasons, and as explained below, Lecheek respectfully

27 requests that this Court dismiss the FAC.

28 //

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-5-
MOTION TO DISMISS FIRST AMENDED COMPLAINT

## II.     BACKGROUND

### A.     ND's Background

ND alleges that it is a "cutting edge sports supplement manufacturer and marketer" and a "leader in the nutritional supplement market specifically for body building." (Exhibit A (FAC) at p. 7, ¶ 14 attached to Request for Judicial Notice ("RJN").) Notwithstanding these claims, ND has suffered financial setbacks in recent years, including a Bankruptcy. In the present litigation – and in other lawsuits – ND blames its financial difficulties on several of its competitors, including Lecheek. However, ND's background and history raise serious questions about this assertion.

### 1.     ND's Bankruptcy

In 2008, ND sought Chapter 11 Bankruptcy protection by filing a petition in Arizona District Court styled, *In re: Nutrition Distribution, LLC (debtor)*, USDC D. Ariz. Bank. Case No. 2:08-bk-17559 CGC (the "Bankruptcy Action"). In October of 2011, while still in Bankruptcy, ND introduced "SlimFX," a "new product in the fat-burner category of the body building supplement world." ND apparently expected SlimFX to "gain substantial market share" and, thereby, rescue ND from its financial woes. (See Exhibit A at p. 8, ¶ 17.)

However, on November 29, 2012 – after four years in Bankruptcy – ND asked the Bankruptcy Court to dismiss its Chapter 11 Bankruptcy petition. In its motion, ND advised the Bankruptcy Court as follows:

> [ND] no longer has the ability to successfully reorganize, has little or no meaningful assets to liquidate for the benefit of its creditors and the bankruptcy estate, had only a modest amount of unsecured debt with over half of that unsecured debt owed to insiders and any remaining assets can best be liquidated outside of bankruptcy. (Exhibit B (Motion to Dismiss Bankruptcy) at p. 16, lines 19-24 attached to RJN.)

In this motion, ND blamed its financial woes on a series of product liability lawsuits filed against it in Alabama, Maryland, and "other states." (Exhibit B at

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-6-

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1    pp. 17-18.)  ND also pointed to an FDA investigation that included a raid on ND's

2    business and confiscation of illegal products being sold by ND.  (Exhibit B at pp.

3    3-4.)  As a result of this investigation, ND was forced to acknowledge that it had

4    sold banned products, but represented to the Bankruptcy Court that it had done so

5    "*unknowingly*."  (Exhibit B at p. 18, emphasis added.)

6         ND also explained to the Bankruptcy Court that it had "attempted to re-

7    launch its business with new branding and to introduce several new product lines,

8    which efforts were largely unsuccessful."  (Exhibit B at p. 19.)  As a result, ND

9    had "come to the sad realization that it simply cannot successfully reorganize" and

10   asked that the Bankruptcy Court "dismiss its pending bankruptcy case and permit

11   [ND] to liquidate any remaining assets outside of bankruptcy."  (Exhibit B at p.

12   20.)  The Bankruptcy Court granted ND's motion to dismiss the Bankruptcy on

13   January 8, 2013.  (Exhibit C (Order Dismissing Bankruptcy) attached to RJN.)

14   **2.    ND's Criminal Background**

15        Despite introducing its new product, SlimFX, in 2011, ND's financial

16   situation did not improve.  In fact, it became much worse when the United States

17   Attorney filed an Information in the United States District Court for the Northern

18   District of California styled, *United States of America v. Nutrition Distribution*

19   *d/b/a/ Anabolic Xtreme*, USDC N.D. Cal. Case No. 5:11-cr-00790-DLJ (the

20   "Criminal Action").  (Exhibit D (Information) attached to RJN.)

21        In this criminal complaint, the United States alleged that ND illegally

22   introduced products called "Anabolic Xtreme Hyperdrol" and "Anabolic Xtreme

23   Slim Xtreme" into the stream of commerce over a period of 2 ½ years.  (Exhibit D

24   at pp. 24-25.).  In connection with these products, the Government charged ND

25   with violating 21 U.S.C. § 331(d), a provision of the Food Drug & Cosmetic Act

26   ("FDCA"), which prohibits introduction of a "new drug" into the stream of

27   commerce without government approval.  21 U.S.C. §§ 331(d) and 335.  The

28   Government further alleged that ND sold these illegal products with the "intent to

-7-

1    defraud and mislead" in violation of 21 U.S.C. § 333(a)(2).  (Exhibit D at p. 24.)

2         Notwithstanding its representation to the Bankruptcy Court that its criminal

3    violations were committed "*unknowingly*," on November 9, 2011, ND *admitted*

4    that it violated the FDCA with the intent to defraud and mislead, as alleged in the

5    Information.  ND also stipulated that the "fraudulent proceeds derived from sale of

6    drugs is over $2.5 million."  (Exhibit E (Criminal Pretrial Minute Order) attached

7    to RJN.)  Based on these admissions, the Honorable D. Lowell Jensen ordered ND

8    to pay $100,000 and to accept a consent agreement allowing the FDA to monitor

9    and test all of ND's products for a period of 5 years.  (Exhibit E.)  Judge Jensen

10   further found that ND "admitted the essential elements of the crime charged."

11   (Exhibit F (Order Accepting Plea) attached to RJN.)  Therefore, Judge Jensen

12   entered a judgment against ND in the Criminal Action on November 20, 2011.

13   (Exhibit G (Judgment in Criminal Action) attached to RJN.)  As a result, ND was

14   found guilty of "Introduction and Delivery of Unapproved New Drug into

15   Interstate Commerce With the Intent to Defraud and Mislead."  (Exhibit G.).

16        **3.    ND's New Strategy: Sue Its Competitors**

17        Approximately eight months after the Bankruptcy Court granted ND's

18   request to liquidate its assets outside of Bankruptcy, ND filed its first complaint

19   against one of its competitors styled, *Nutrition Distribution v. Driven Sports, et al.*,

20   USDC C. D. Cal. Case No. 2:13-cv-06195-JAK-PLA (the "*Driven Sports*

21   Action").  (Exhibit H attached to RJN.).  In the *Driven Sports* Action, ND alleged

22   that the defendant had violated the Lanham Act's prohibition on false advertising

23   by misrepresenting the ingredients of "Craze," one of Driven Sport's "pre-

24   workout" products.  (Exhibit H at pp. 39-43.)  ND also claimed that Driven Sports'

25   purported false advertising of Craze's ingredients caused diminished sales of ND's

26   own product – "Supersized."  (Exhibit H at pp. 39-43.)  Although ND had, itself,

27   pleaded guilty to felonious distribution of unapproved drugs in violation of the

28   FDCA less than two years earlier, ND's complaint in the *Driven Sports* Action

-8-
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

expressed amazement that Driven Sports' founder had been convicted of a similar crime. (Exhibit H at p. 39.)

Presumably pleased with a satisfactory settlement in the *Driven Sports Action*, ND has recently filed three more lawsuits – including this one – alleging false advertising by other ND competitors pertaining to certain of the competitors' products and ingredients. Besides the present lawsuit against Lecheek, ND has filed *Nutrition Distribution LLC v. Blackstone Labs*, USDC C.D. Cal. Case No. 2:15-cv-1670 TJH AS (the "*Blackstone* Action") and *Nutrition Distribution v. Lucas Thompson dba Extreme Performance Group*, USDC C.D. Cal. Case No. 2:15-cv-02220 CBM AS (the "*Thompson* Action"). (Exhibits I and J, respectively, attached to RJN.)

The *Blackstone* Action and the *Thompson* Action are both very similar to the present action against Lecheek. In all three lawsuits, ND claims that its own products have not adequately sold because the products of its competitors allegedly contain illegal ingredients and the competitors have made false claims about the ingredients they use.

## B.   The Lecheek Action

Lecheek is an Arkansas corporation with its principal place of business in Harrison, Arkansas. (Exhibit A at p. 6, ¶ 8.) In November of 2013, Lecheek launched a product called "AMPilean." (Exhibit A at p. 8, ¶ 20.)[1] ND claims that Lecheek identified "AMP Citrate" as AMPilean's "key ingredient." (Exhibit A at pp. 6-7, ¶ 27.) ND further claims that, in its subsequent formula of AMPilean,

---

[1] This date is significant because it confirms that Lecheek launched its AMPilean product approximately two years *after* ND introduced SlimFX (Exhibit A at p. 8, ¶ 17) and one year *after* ND advised the Bankruptcy Court that its efforts "to relaunch its business with new branding" and "to introduce several new product lines" had failed. (Exhibit B at p. 19.) Given this timeline, ND's attempt to blame Lecheek for the failures it suffered with SlimFX years before Lecheek introduced AMPilean demonstrates that ND's allegations against Lecheek are a mere pretense for bringing this lawsuit.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-9-

1   Lecheek replaced AMP Citrate with a new ingredient called AMPiberry.  (See

2   Exhibit A at p. 10, ¶ 28.)

3       On February 24, 2015, ND filed the instant action against Lecheek.  (Docket

4   No. 1.)  In response, on April 29, 2015, Lecheek filed a motion to dismiss and to

5   transfer this action to the Western District of Arkansas.  (Docket No. 13.)  The

6   motion to dismiss was rendered moot when ND filed the FAC on May 11, 2015.

7   (Docket No. 18.)  As of the filing of this motion, the motion to transfer is still

8   pending.

9       In this action, ND asserts that Lecheek has made various false claims about

10  AMPilean and about the ingredients used in AMPilean.  ND also claims that it has

11  suffered damage as a result.

12      **1.    Pouchong Tea Claim**

13      ND's FAC asserts that Lecheek has falsely asserted that the ingredient,

14  AMP Citrate, is derived from the aroma of Pouchong tea.  In truth, ND claims that

15  this ingredient previously used in AMPilean (1.0) is "virtually identical" (or a

16  "synthetic analog") to a substance banned by the FDA, called "DMAA."  (Exhibit

17  A at p. 8, ¶ 20.)  ND also asserts that AMP Citrate is a "synthetic compound

18  created in a laboratory." (Exhibit A at pp. 9-10, ¶ 27.)

19      **2.    "Rigorous Test[ing]" Claim**

20      ND's pleading further claims that Lecheek "falsely marketed AMPilean as

21  being rigorously tested, when in reality there was no safety testing conducted."  In

22  addition, ND complains that AMPCitrate "has never been tested on humans."

23  (Exhibit A at pp. 9-10, ¶ 27.)

24      **3.    AMPiberry Claim**

25      ND also asserts that Lecheek made misrepresentations regarding an

26  ingredient used in AMPilean (2.0) called AMPiberry.  Specifically, ND complains

27  that the ingredient, AMPiberry, is described on the AMPilean (2.0) label "as

28

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-10-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  simply '*juniperus communis*.'" (See Exhibit K attached to RJN.)[2]  According to

2  ND, this description gives "the false impression that AMPiberry is purely an

3  extract of the common shrub" when, in fact, AMPiberry "merely '*includes* extracts

4  of the juniper berry.'" (Exhibit A at p. 10, ¶ 29, emphasis in original.)

5      **4.**   **Illegality Claim**

6      Lastly, ND asserts that the alleged misrepresentations described in the FAC

7  are part of Lecheek's "continuing false, misleading, illegal and deceptive

8  practices." (Exhibit A at p. 5, ¶ 3.)  With respect to Lecheek's alleged "practices,"

9  ND asserts as follows:

10         [Lecheek's] scheme to outflank government regulators to
           sell these illicit products not only damages competitors

11         like [ND] with unadulterated products like SlimFX, it
           potentially puts customers in serious danger. (Exhibit A

12         at p. 10, ¶ 31.)

13     Based on the foregoing claims, ND alleges that Lecheek is liable for false

14 advertising in violation of Section 43(a)(1)(B) of the Lanham Act.

15 **III.**  **LEGAL ARGUMENT**

16     **A.**   **Standard For Motion To Dismiss**

17     Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss a

18 claim for "failure to state a claim upon which relief can be granted[.]"  "To survive

19 a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

20 true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

21 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544,

22 570 (2007) ("*Twombly*")).  The Court's obligation to accept the truth of all of the

23 allegations contained in the complaint "is inapplicable to legal conclusions."

24 *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a

25 ────────────────────────

26 [2] "Courts often take judicial notice of packaging labels in false advertising suits
   when neither party objects to the authenticity of the labels and the labels are central

27 to the plaintiff's complaint."  *Samet v. P&G*, 2013 U.S. Dist. LEXIS 86432, *7-*8
   (N.D. Cal. 2013); see also *Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000,

28 1003 (N.D. Cal. 2012).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1   cause of action, supported by mere conclusory statements, do not suffice." *Id.*

2   Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content

3   that allows the court to draw the reasonable inference that the defendant is liable

4   for the misconduct alleged." *Id.* Factual allegations that only permit the Court to

5   infer "the mere possibility of misconduct" do not show that the pleader is entitled

6   to relief. *Id.* at 679.

7         **B.**    <u>**The FAC Does Not Satisfy Rule 9(b)**</u>

8       FRCP 9(b) provides, in pertinent part:

9           In alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud or

10          mistake.

11      A plaintiff's failure to comply with the Rule 9 pleading requirement subjects

12  the complaint to dismissal pursuant to FRCP 12(b)(6). See e.g. *Vess v. Ciba-Geigy*

13  *Corp. USA*, 317 F.3d 1097, 1107-1108 (9th Cir. 2003) ("[I]t is established law in

14  this and other circuits that such dismissals [for failure to satisfy Rule 9(b)] are

15  appropriate); *Izenberg v. ETS Services*, 589 F.Supp.2d 1193, 1201-1202 (C.D. Cal.

16  2008) (failure to plead mail fraud with particularity warranted dismissal of

17  complaint).

18      "Generally, a complaint must adequately specify the statements it claims

19  were false or misleading, give particulars as to the respect in which plaintiff

20  contends the statements were fraudulent, state when and where the statements were

21  made, and identify those responsible for the statements." *In re: Glenfed, Inc.*

22  *Securities Litigation*, 42 F.3d 1541, 1547, fn. 7 (9th Cir. 1994) (quoting Moore's

23  Federal Practice & Procedure, § 9.03 at 9-19-21 (2d ed. 1994)). The allegations

24  must be "specific enough to give defendants notice of the particular misconduct

25  which is alleged to constitute the fraud charged so that they can defend against the

26  charge and not just deny that they have done anything wrong." *Semegen v.*

27  *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To that end, "[a]verments of fraud

28  must be accompanied by 'the who, what, when, where, and how' of the misconduct

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  charged." *Kearns v. Ford Motor Company*, 567 F.3d 1120, 1124 (9th Cir. 2009)

2  (quoting *Vess v. Ciba, supra*, 317 F.3d at 1106).

3        Furthermore, because allegations of fraud are particularly injurious to

4  business and professional reputations, courts strictly apply Rule 9(b) and require

5  plaintiffs to state "the manner in which [the alleged misrepresentations] are false,

6  and the facts that support an inference of fraud … " *Comwest, Inc. v. American*

7  *Operator Services, Inc.*, 765 F.Supp. 1467, 1471 (C.D. Cal. 1991).  The

8  requirements of Rule 9(b) also extend to claims where fraud is merely alleged.

9  The Ninth Circuit explained this rule as follows:

10              In cases where fraud is not a necessary element of a
             claim, a plaintiff may choose nonetheless to allege in the
11           complaint that the defendant has engaged in fraudulent
             conduct.  In some cases, the plaintiff may allege a unified
12           course of fraudulent conduct and rely entirely on that
             course of conduct as the basis of a claim.  In that event,
13           the claim is said to be "grounded in fraud" or to "sound
             in fraud," and the pleading of that claim as a whole must
14           satisfy the particularity requirement of Rule 9(b).  *Vess v.*
             *Ciba*, 317 F.3d at 1103-1104.
15

16        As a result, numerous courts in the Central District have concluded that

17  claims of false advertising in violation of the Lanham Act grounded in fraud must

18  be pleaded with the heightened specificity required by Rule 9.  See *RPost*

19  *Holdings, Inc. v. Trustifi Corp.*, 2011 U.S. Dist. LEXIS 117260, * 8-11 (C.D. Cal.

20  2011); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d

21  1074, 1085 (C.D. Cal. 2010); *Pom Wonderful LLC v. Ocean Spray Cranberries,*

22  *Inc.*, 642 F.Supp.2d 1112, 1123-24 (C.D. Cal. 2009); see also *AccuImage*

23  *Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003)

24  (dismissing the plaintiff's Lanham Act claim when the complaint did not "allege

25  any facts regarding the location, timing, or content of [the defendant's] allegedly

26  false statements").

27        Furthermore, application of Rule 9 to a Lanham Act claim is particularly

28  appropriate where, like here, a plaintiff specifically alleges that the defendant

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-13-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  engaged in "purposeful" conduct.  See *Pestube Sys., Inc. v. HomeTeam Pest Def.,*

2  *LLC*, 2006 U.S. Dist. LEXIS 34337, *12-17 (D. Ariz. 2006) (applying Rule 9(b) to

3  plaintiff's Lanham Act claim that was "grounded" or "sounding" in fraud when the

4  complaint alleged "knowing" misrepresentations).

5      Proper application of Rule 9(b) in a false advertising case between

6  competitors was illustrated in *Transfresh Corp. v. Ganzerla & Associates*, 862

7  F.Supp.2d 1009 (N.D. Cal. 2012).  In this case, Transfresh and PeakFresh were

8  competitors in the produce transportation industry.  *Id*. at 1012-1013.  Transfresh

9  filed a false advertising suit against PeakFresh, based on representations contained

10  on PeakFresh's website, including a video comparing the two companies' systems

11  for packaging fresh produce for transport.  Transfresh claimed that several of the

12  representations in the video and on the website were false, including (a) the

13  allegation in the video that PeakFresh's process is more environmentally friendly

14  than Transfresh's processes; (b) the allegation on the PeakFresh website that

15  PeakFresh's process is a "green" method that is safer for employees than other

16  methods; (c) the allegation that PeakFresh sent sealable refrigerator bags to

17  potential customers and then represented that its systems work just as well as the

18  bags; and (d) the allegation that PeakFresh misrepresented and altered a 1999 UC

19  Davis study which allegedly supported PeakFresh's representations.  *Id*. at 1018-

20  1019.

21      In moving to dismiss the complaint, PeakFresh argued that the alleged

22  misstatements complained of by Transfresh were not pleaded with adequate

23  particularity, as required by Rule 9(b).  The Court rejected PeakFresh's Rule 9

24  argument with respect to the allegations that the PeakFresh video and website

25  made misrepresentations regarding the safety and environmental sensitivity of

26  PeakFresh's processes.  With respect to these allegations, the Court observed that

27  Transfresh had "identified specific statements, the source of those statements …

28  when they were made … where they can be found … and why they are

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-14-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    misleading." *Id.* at 1019.  However, with respect to the statements regarding the

2    sealable bags and the UC Davis study, the Court *granted* PeakFresh's motion to

3    dismiss based on Rule 9(b).  *Id.*  With respect to the sealable bag allegation,

4    Transport did "not include allegations identifying who specifically made these

5    statements, when the statements were made, or to whom they were made." *Id.*  As

6    for the UC Davis study, Transfresh's complaint did not allege (a) "when and where

7    the statements … were made," (b) why the alleged statements about the study were

8    misleading; (c) how the study was altered, or (d) why the altered version of the

9    study was misleading.  *Id.*  Thus, these allegations failed to satisfy the pleading

10   requirements of Rule 9(b).

11         In this case, ND generally asserts that "Lecheek made false claims about the

12   properties of AMP Citrate, [and] about the contents of AMPilean."  (Exhibit A at

13   p. 9, ¶ 27.)  ND also generally and generically claims that "Lecheek has introduced

14   its false statements into interstate commerce via marketing and advertising on

15   various websites and shipments of its product into interstate commerce containing

16   false advertising."  (Exhibit A at p. 12, ¶ 44.)

17         Besides these general claims, ND specifically asserts that "AMP Citrate is

18   falsely advertised as being derived from Pouchong tea."  (Exhibit A at p. 5, ¶ 1.)

19   ND also alleges that Lecheek has "falsely marketed AMPilean as being rigorously

20   tested, when in reality there was no safety testing conducted."  (Exhibit A at pp. 9-

21   10, ¶ 27.)  Finally, ND claims that Lecheek made misrepresentations regarding the

22   ingredient, AMPiberry, which is used in AMPilean (2.0).  (Exhibit A at p. 10, ¶¶

23   28-29.)  According to ND, all of these alleged misrepresentations by Lecheek were

24   made "purposely."  (Exhibit A at p. 12, ¶ 41.)

25         As an initial matter, ND's FAC fails to identify all of the alleged "false

26   claims about the properties of AMPCitrate" that are at issue in this litigation.

27   Likewise, ND does not identify the "marketing and advertising on various websites

28   and shipments" which purportedly include Lecheek's false advertising.  These

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-15-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    types of general allegations clearly do not satisfy Rule 9(b).  See e.g. *Gustavson v.*
2    *Wrigley Sales Co.*, 961 F.Supp.2d 1100, 1131 (N.D. Cal. 2013) (plaintiff's failure
3    "to identify a single website upon which" its website claims were based violates
4    Rule 9(b)).

5         As for those specific misrepresentations that *are alleged* in the FAC, ND
6    does not state the particulars of each purportedly false statement, such as "when
7    and where the statements were made" or the identity of "those responsible for the
8    statements." *In re: Glenfed*, 42 F.3d at 1547, fn. 7.

9         For instance, ND claims that Lecheek falsely advertised AMP Citrate "as
10   being derived from the aroma of Pouchong tea."  (Exhibit A at p. 5, ¶ 1.)
11   However, ND's FAC does not provide any information regarding the dates of the
12   purported advertisements, where the allegedly false advertisements appeared, or
13   even the advertising medium used.

14        Similarly, ND asserts that Lecheek misrepresented that AMPilean was
15   "rigorously tested" even though there was no "safety testing."  (Exhibit A at pp. 9-
16   10, ¶ 27.)  However, the FAC, again, provides no information regarding when the
17   advertisement regarding testing was made, where it was made, the identity of the
18   person who allegedly made the statement, or the medium involved.

19        As for its claim regarding the ingredient, AMPiberry, ND does not explain
20   how the AMPilean (2.0) label is false.  *Comwest*, 765 F.Supp. at 1471.  If ND is
21   suggesting that AMPiberry is comprised of ingredients other than "*juniperus*
22   *communis*," then Rule 9 requires that ND specifically make this allegation, and that
23   it identify the other ingredient(s) ND contends are included in AMPiberry.  ND has
24   done neither.

25        ND's allegations regarding Lecheek's purportedly false advertisements are
26   woefully threadbare and fail to comply with the particularity requirements of Rule
27   9(b).  Accordingly, this Court should dismiss the FAC.
28   //

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-16-
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

**C.     ND Has Failed To Plead A "Plausible" Claim Against Lecheek Relating To The Ingredient, AMPiberry**

2

3    FRCP 8(a) states, in pertinent part:

4        A pleading that states a claim for relief must contain:

5                                    * * *

6        (2)    a short and plain statement of the claim showing that the pleader is entitled to relief;

7

8    As discussed above, under Rule 8, "[t]hreadbare recitals of the elements of a

9    cause of action, supported by mere conclusory statements" are insufficient to

10   provide the "showing" needed to support a claim. *Iqbal*, 556 U.S. at 678. A

11   plaintiff is not permitted to "plead the bare elements of [a] cause of action, affix

12   the label 'general allegation,' and expect [the] complaint to survive a motion to

13   dismiss." *Id*. at 687. Rather, the claim must be "plausible" – that is, it must have

14   "facial plausibility" including enough "factual content [to] allow[] the court to

15   draw the reasonable inference that the defendant is liable for the misconduct

16   alleged." *Id*. Put another way, the claim must "possess enough heft" to show a

17   "plausible" claim for relief. *Twombly*, 550 U.S. at 557.

18   To prevail on a Lanham Act false advertising claim, a plaintiff must plead

19   (1) a false statement of fact by the defendant in a commercial advertisement about

20   its own or another's product; (2) the statement actually deceived or has the

21   tendency to deceive a substantial segment of its audience; (3) the deception is

22   material, in that it is likely to influence the purchasing decision; (4) the defendant

23   caused its false statement to enter interstate commerce; and (5) the plaintiff has

24   been or is likely to be injured as a result of the false statement, either by direct

25   diversion of sales from itself to defendant or by a lessening of the goodwill

26   associated with its products. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105,

27   1110 (9th Cir. 2012).

28   //

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-17-
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  In this case, ND seizes on a statement made by Lecheek's CEO, Dustin

2  LeBleu, in a declaration filed in this case.  The full statement in Mr. LeBleu's

3  declaration is as follows:

> AMPiberry is taken from a form of Juniperus communis
> (common juniper), a species in the genus Juniperus, in
> the family Cupressaceae.  In short, AMPiberry includes
> extracts of the juniper berry.  (Docket No. 17-3 at p. 5, ¶
> 13.)

7  Next, ND compares one part of this statement – that AMPiberry "includes

8  extracts of the juniper berry" – with the label for AMPilean (2.0), which describes

9  the ingredient, AMPiberry, as "*juniperus communis*."  (Exhibit A at p. 10, ¶ 29;

10  Exhibit K.)  Based solely on this comparison, ND jumps to the conclusion that

11  Lecheek has made a misrepresentation about AMPiberry by "giving the false

12  impression that AMPiberry is purely an extract of the common shrub."  (Exhibit A

13  at p. 10, ¶ 29.)[3]  This remarkably contrived claim fails in several respects.

14  First, in order to support a claim under the Lanham Act, there must be a

15  misrepresentation that is "material."  *Skydive Ariz.*, 673 F. 3d at 1110.  Yet, the

16  AMPilean (2.0) label and the statement in Mr. LeBleu's declaration do not reveal a

17  misrepresentation, let alone a *material* misrepresentation.

18  Second, to be viable, ND must plausibly allege that it has been injured, or is

19  likely to be injured because the AMPilean (2.0) label describes AMPiberry as

20  "*juniperus communis*."  See *id*.  That ND has somehow been injured based on the

21  description of AMPiberry on the AMPilean (2.0) label is simply implausible.

22  Third, ND must provide sufficient "factual content [to] allow[] the court to

23  draw the reasonable inference that [Lecheek] is liable for the misconduct alleged."

24  *Iqbal*, 556 U.S. at 687.  Here, ND tries to manufacture a claim by noting a slight

25  difference in wording on the AMPilean (2.0) label when compared with the

26  _____

27  [3] These allegations regarding AMPiberry are set forth in the general allegations and
then incorporated by reference in the second claim for relief against Lecheek.  (See

28  Exhibit A at p. 10, ¶ 29 and p. 12, ¶ 40.)

-18-

1  statement made by Mr. LeBleu in his declaration.  That is the entire basis of ND's

2  claim.  ND does not allege that ingredients other than juniper berry are contained

3  in AMPiberry.  Nor does ND identify any other ingredients allegedly contained in

4  AMPiberry.  In sum, ND does not  supply a single fact to support its apparent

5  supposition that AMPiberry contains something more that "extracts of the juniper

6  berry."  ND's speculation that Lecheek has misrepresented AMPiberry in some

7  unknown and unspecified fashion is not enough to bring ND's claim within the

8  realm of "plausibility."[4]

9      **D.**   **ND's Claim That Lecheek Sold "Illicit Products" Should Be**

10          **Stayed Or Dismissed**

11      Under the primary jurisdiction doctrine, a Court may refer an issue raised in

12  litigation to an administrative agency for resolution of a particular technical issue.

13  See *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) ("[C]laims properly cognizable in

14  court [may] contain some issue within the special competence of an administrative

15  agency.").  The primary jurisdiction doctrine applies where there is "(1) the need to

16  resolve an issue that (2) has been placed by Congress within the jurisdiction of an

17  administrative body having regulatory authority (3) pursuant to a statute that

18  subjects an industry or activity to a comprehensive regulatory scheme that (4)

19  requires expertise or uniformity in administration."  *United States v. General*

20  *Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).  "Once a district court

21  determines that primary jurisdiction is appropriate, it may either stay proceedings

22  or dismiss the case without prejudice."  *Astiana v. Hain Celestial Group, Inc.*, 783

23  F.3d 753, 2015 U.S. App. LEXIS 5833, *18 (9th Cir. 2015).

24  //

25  //

26  //

27

28

---

[4] In point of fact, AMPiberry *is* the extract of juniper berry; it contains no other added ingredients.

-19-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1.   **Congress Has Granted Authority To The FDA To Adjudicate The Legality Of Dietary Supplements**

Pursuant to the FDCA – a comprehensive regulatory scheme – Congress has delegated "broad authority" to the FDA "to regulate food, drug, and dietary supplement products in order to ensure public health and safety." *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1035 (10th Cir. 2006); see also 21 U.S.C. §§ 301, et seq.  With respect to dietary supplements, Congress amended the FDCA in 1994 when it enacted the Dietary Supplement Health and Education Act ("DSHEA"), which "regulates vitamins, minerals, herbs, amino acids, and other dietary substances." *Nutraceutical Corp.*, 459 F.3d at 1035.  Thus, for the past 20 years, the DSHEA has been part of the FDCA's comprehensive statutory scheme – with enforcement authority vested in the FDA – which ensures that manufacturers and distributors of dietary supplements are prevented from "marketing products that are adulterated or misbranded." http://www.fda.gov/Food/DietarySupplements/.)

In this case, there is no question that, whether Lecheek's dietary supplements and ingredients attacked by ND in this action are "illicit" or pose a threat to the public, are questions that Congress has placed within the FDA's jurisdiction, including its enforcement authority.  Thus, the first three requirements for application of the primary jurisdiction doctrine are satisfied.  *U.S. v. General Dynamics*, 828 F.2d at 1362.

2.   **Whether Lecheek's Products Are "Illicit" And Dangerous Are Issues Requiring FDA Expertise And Administration**

Just because Congress has invested the FDA with "broad authority" to regulate and make determinations regarding dietary supplements does not necessarily mean that Courts have no role in adjudicating the legality of a dietary supplement.  In order to apply, the primary jurisdiction doctrine states that the issue presented to the Court must also "require[ ] expertise or uniformity in

-20-

1  administration." *Id.* In this particular case, the alleged illegality of Lecheek's

2  products and ingredients, and the danger they allegedly present to the public, are

3  issues which clearly require expertise that only the FDA can provide. Indeed, only

4  the FDA has the expertise to evaluate the questions posed by ND, as well as the

5  ability to supply uniform administration to the dietary supplement industry.

6      The need for the FDA to weigh in on issues like those alleged against

7  Lecheek is illustrated in *JHP Pharmaceuticals, LLC v. Hospira, Inc.*, 2014 U.S.

8  Dist. LEXIS 142797 (C.D. Cal. 2014). In this case, the plaintiff, JPH

9  Pharmaceuticals ("JPH"), manufactured an injectable epinephrine under the brand

10  name, Adrenalin. The FDA granted JHP permission to market and sell Adrenalin.

11  *Id.* at *3. JPH thereafter sued several defendants under the Lanham Act, alleging

12  they were selling epinephrine products that were not approved by the FDA. JPH

13  also claimed that the defendants had made various misrepresentations regarding

14  their epinephrine products. *Id.* at *3-*4. One of the alleged misrepresentations

15  was that the defendants were marketing and selling "illegal" products. *Id.* at *4.

16      In ruling on the defendants' motion to dismiss, the District Court rejected

17  most of the defendants' arguments that JPH's Lanham Act claims were precluded

18  or barred by the FDCA. However, with respect to JHP's claim that the defendants'

19  products were *illegal*, the Court found that this question required a more detailed

20  analysis implicating the FDA's primary jurisdiction. See *id.* at *23-*24. The

21  Court noted that whether a drug "can be lawfully marketed under the FDCA

22  involves complex issues of history, public safety, and administrative priorities that

23  Congress has delegated to the FDA." *Id.* at *25. The District Court further

24  explained:

25          [T]his Court cannot proceed on this claim without a clear
            statement by the FDA. To do so would be to arrogate the
26          authority of the FDA to decide, at least in the first
            instance, the legality or illegality of marketing a
27          particular substance. *Id.* at *26.

                              * * *

28

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7

> In short, in order to resolve [JHP's] Lanham Act claim based on a factual allegation that the Defendants are falsely claiming to comply with the law while in fact selling illegal products, the Court must resolve an issue that Congress has placed "within the jurisdiction of an administrative body having regulatory authority," under a comprehensive regulatory scheme. (Citation.) And, crucially, this is not a question that can be resolved without expertise. (Citation.) ... This it seems clear that [JHP's] Lanham Act claim with regard to legality requires a determination that is within the primary jurisdiction of the FDA. *Id.* at *26-*27.

8  The FAC alleges that Lecheek's "false, misleading, <u>illegal</u> and deceptive

9  practices have violated the Lanham Act." (Exhibit A at p. 5, ¶ 3, emphasis added.)

10  ND goes on to claim that Lecheek has set in motion a "scheme to outflank

11  government regulators to sell ... illicit products" which "not only damage[ ]

12  competitors like [ND] with unadulterated products like SlimFX," but these

13  products "potentially put[ ] consumers in serious danger." (Exhibit A at p. 10, ¶

14  31.) Thus, central to ND's Lanham Act claim is that Lecheek is selling "illicit"

15  (illegal) products that are injuring ND and placing Lecheek's own customers in

16  danger. Whether these allegations are true or false is clearly a matter for the FDA.[5]

17  Referring such a determination to a District Court "would be to arrogate the

18
19

20  [5] In its opposition to ND's motion for preliminary injunction, Lecheek

21  acknowledged that it received a "warning letter" from the FDA regarding the ingredient, AMP Citrate. (Docket No. 14-4, pp. 23-26.) However, issuance of a

22  "warning letter" does not reflect a final determination by the FDA, let alone

23  guidance regarding the legality of products and ingredients. See 21 C.F.R. § 10.115(b)(3) ("Guidance documents do not include ... warning letters ... or other

24  communications directed to individual persons or firms."); *Dietary Supplemental*

25  *Coalition, Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992) (warning letters and specific product seizures did not reflect a final determination by the FDA); *Holistic*

26  *Candlers and Consumers Assoc. v. FDA*, 664 F.3d 940, 944-945 (D.C. Cir. 2012)

27  (warning letters are "only 'informal and advisory'"). Warning letters merely give firms an opportunity to undertake "voluntary" changes; they do not commit the

28  FDA to take action. *Id.*

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-22-

MOTION TO DISMISS FIRST AMENDED COMPLAINT

authority of the FDA to decide … in the first instance, the legality or illegality of marketing a particular substance." *JHP*, 2014 U.S. Dist. LEXIS 142797 at *26.

In sum, where, as here, the FDA has not yet made a final determination regarding the legality of a dietary supplement or ingredient, the issue of legality does not become the province of a District Court adjudicating a Lanham Act claim. Rather, District Courts generally leave these matters to the FDA under the primary jurisdiction doctrine. See *Summit Tech. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 934 (C.D. Cal. 1996).  That is what should occur here.

## IV.   **CONCLUSION**

For the reasons discussed, Lecheek respectfully requests that this Court dismiss the FAC based on ND's failure to state a cause of action.  With respect to ND's claim that Lecheek is selling "illicit products" that pose a danger to its customers, the Court should either dismiss or stay this claim pursuant to the primary jurisdiction doctrine.

Dated:  May 29, 2015

Respectfully submitted,

GORDON & REES LLP


By: /s/ Christopher R. Wagner
Peter Schwartz
Christopher R. Wagner
Gary A. Collis
Attorneys for Defendant Lecheek
Nutrition, Inc.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-23-

MOTION TO DISMISS FIRST AMENDED COMPLAINT